# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

HECTOR GEMBE, a/k/a ARTURO MARTINEZ,

        Defendant-Appellant.

UNPUBLISHED
November 18, 2014

No. 316911
Calhoun Circuit Court
LC No. 2012-003305-FC

Before: METER, P.J., and WHITBECK and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right from his conviction by a jury of criminal sexual conduct in the first degree (CSC I), MCL 750.520b(1)(a). The trial court sentenced him to a term of 150 to 300 months' imprisonment. We affirm.

## I. FACTS

Defendant was accused of repeatedly sodomizing seven-year-old MH for an extended period. At the time, MH was a non-English-speaking, Mexican immigrant. Her mother would leave for work before MH left for school and would return about 30 minutes after MH returned home. Defendant was a family friend who drove MH, together with his daughter and two of his other relatives, to and from school in his white, full-size van. After pulling into his driveway after school, defendant would let the other girls out first and tell them to go home. When MH attempted to leave, defendant would push her back inside, direct her to the rear bench, have her turn around, and then force her to her hands and knees. Defendant would then lift up her dress or pull down her pants, remove her underwear, and sodomize her.

MH testified that defendant would assault her every time he picked her up from school and that these incidents continued for about a year. She said defendant told her not to tell her mother because "she can't do nothing, she's by herself." MH explained that she never reported the incidents because she was scared that her mother would get into trouble. Several years later, in 2012, MH told her cousin that defendant had sexually abused her. She said she was no longer afraid to report defendant because she was older, had become a citizen, and knew "[h]er rights."

-1-

## II. EVIDENCE REGARDING BELIEF ABOUT MURDER

On cross-examination, defense counsel asked MH a series of questions suggesting that she was falsely accusing defendant of sexual abuse because her stepfather and defendant had a "beef." During this questioning, MH explained that one reason she had failed to report the issue was because she had heard that defendant "killed someone in Mexico." The lower court sustained defense counsel's immediate objection and told the jury that there was "obviously" no factual basis for the comment and that it was not to consider it.

On re-cross-examination, defense counsel attempted to use MH's statement against her by insinuating that she was falsely accusing defendant of sexual abuse to get justice for the murder she believed he had committed in Mexico. The lower court then found that defense counsel had opened the door to questions on this issue and allowed the prosecution to question MH about the murder allegation on its second re-direct examination. MH then reiterated that she did not report the abuse because she believed defendant was dangerous and that he had killed someone in Mexico.

Defendant first argues that the trial court erred in holding that defense counsel had opened the door for the prosecution to ask questions regarding MH's belief. He cites *Grist v Upjohn Co*, 16 Mich App 452; 168 NW2d 389 (1969), which quotes 31A CJS, Evidence, § 190, pp 509-512, for the proposition that once a party opens the door,

> the adverse party is entitled to introduce evidence on the same matters lest he be prejudiced. The party who first introduces improper evidence cannot object to the admission of evidence from the adverse party relating to the same matter. However, the admission of such evidence is not a matter of absolute right, but rests in the sound discretion of the court, which will not permit a party to introduce evidence, which should not be admitted, merely because the adverse party has brought out some evidence on the same subject, where the circumstances are such that no prejudice can result from a refusal to go into the matter further.

Defendant maintains that the prosecutor was not prejudiced by evidence of the alleged murder and that the prosecutor's questions were not aimed at correcting a distortion. We note that, at the point MH's belief that defendant had been involved in a murder was before the jury, any prejudice that might have arisen solely from evidence that she had this belief was already present. The prosecutor did not seek to go into the belief further, but inquired only about the relationship between this belief and her fear. Because the prosecutor did not go into the objectionable matter further, defendant has failed to establish an abuse of discretion and coextensively, he has failed to establish that he was denied his due process right to a fair trial.

Defendant also argues that defense counsel was ineffective for questioning MH about her belief regarding the murder. Defendant did not preserve this claim by moving for a new trial or an evidentiary hearing and accordingly, appellate review is precluded unless the record contains sufficient detail to support the claim. *People v Sabin*, 242 Mich App 656, 658-659; 620 NW2d 19 (2000).

The right to effective assistance of counsel is grounded in the United States and Michigan Constitutions. US Const, Am VI; Const 1963, art 1, § 20. Courts presume that counsel has afforded effective assistance and the defendant must prove otherwise. *People v Davis*, 250 Mich App 357, 368-369; 649 NW2d 94 (2002). To establish an ineffective assistance of counsel claim, the defendant "must show that (1) counsel's performance was below an objective standard of reasonableness under prevailing professional norms[,] . . . (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different," and (3) the result was fundamentally unfair or unreliable. *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012). "[T]his Court will not substitute its judgment for that of counsel regarding matters of trial strategy," *Davis*, 250 Mich App at 368, nor will it assess counsel's competence with the benefit of hindsight, *People v Matuszak*, 263 Mich App 42, 58; 687 NW2d 342 (2004). Moreover, "[a] particular strategy does not constitute ineffective assistance of counsel simply because it does not work." *Id.* at 61.

Defendant's ineffective assistance claim fails. Indeed, defense counsel's performance did not fall below an objective standard of reasonableness because questioning MH about her murder comment was a reasonable trial strategy. MH first made the murder allegation during cross-examination as a nonresponsive answer to one of defense counsel's questions. As a result, defense counsel only addressed the issue after MH had made the allegation in front of the jury. Throughout the trial, defense counsel theorized that MH was falsely accusing defendant. When MH commented during cross-examination that she believed defendant was not punished for a murder he committed in Mexico, it provided a possible motive she might have had for making such false allegations. Although defense counsel's strategy ultimately proved unsuccessful, defense counsel's strategy was reasonable at the time. As stated above, this Court will not assess defense counsel's competence with the benefit of hindsight. *Matuszak*, 263 Mich App at 58.[1]

### III. VOUCHING ISSUES

The lower court qualified psychologist Randall E. Haugen as an expert witness regarding the character and behavior of sexual assault victims, over defendant's objection. Haugen testified that he had treated sexual assault victims as part of his psychology practice for more than 20 years, but admitted that he did not speak with MH regarding this particular case. Haugen explained that victims of sexual abuse vary in the amount of time they delay before reporting an incident. He stated that some wait years.

On cross-examination, defense counsel asked Haugen if he had ever dealt with individuals who made false allegations of sexual abuse. Haugen stated that he had, further

---

[1] We further note that the lower court provided an instruction regarding MH's allegation, stating, "there's no factual basis, obviously, for that comment, and you're not to consider it, quite frankly." "It is well established that jurors are presumed to follow their instructions." *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998).

explaining that typically false allegations are made to achieve some secondary gain. On redirect, the prosecution followed up on the issue, asking Haugen if false accusations are common. Haugen said that he does roughly 20 or 30 assessments a week and had "a couple" false reports of sexual abuse the prior year.

Additionally, Brad Wise, a detective, testified that defendant voluntarily came in for an interview after he contacted him regarding the investigation. The prosecution asked Wise to describe some of his interview techniques. Wise explained that he sometimes tells suspects that he believes they are lying, or that he believes the victim in a case if "the facts bear that out."[2] He also stated that he uses this technique regardless of whether he personally believes that what he is saying is true, because he will use whatever technique will help elicit information from a suspect. The prosecution moved to admit a videotaped recording of Wise's interview of defendant. Before playing the recording, the lower court instructed the jury as follows: "The admissible evidence here are [sic] [defendant's] statements, and -- and the comments of Detective Wise and his statements throughout, they're not evidence and they're not -- and they shouldn't be considered as evidence by you. . . . They just are there to give meaning to any responses by the Defendant . . . ." In the video, Wise repeatedly asks, "she's telling the truth, isn't she?"

Defendant now argues that Haugen and Wise improperly vouched for MH's testimony. While defendant objected to the qualification of Haugen as an expert witness, he did not object to Haugen's testimony regarding the frequency of false sexual abuse claims he sees in his practice. Similarly, although defendant objected to some of Wise's testimony, he did not object on vouching grounds to Wise's comments regarding his investigative techniques. As a result, these issues are not preserved for appeal. To prevail on a claim of unpreserved nonconstitutional error, a defendant must show "'a plain error that affected substantial rights. The reviewing court should reverse only when the defendant is actually innocent or the error seriously affected the fairness, integrity, or public reputation of judicial proceedings.'" *People v Girard*, 269 Mich App 15, 19; 709 NW2d 229 (2005), quoting *People v Carines*, 460 Mich 750, 774; 597 NW2d 130 (1999).

In *People v Peterson*, 450 Mich 349, 375-376; 537 NW2d 857, amended 450 Mich 1212 (1995), the Court noted that witnesses had not testified that a child was telling the truth but the Court found improper vouching where two witnesses testified that there was a large proportion of children who alleged abuse that were credible. 450 Mich at 375-376. However, because one witness said that children lied in about two percent of sexual abuse cases and another said they were truthful approximately 80% of the time, the Court concluded that this error (and another) "did not particularly favor either side, and, hence, did not affect the jury's decision to convict." 450 Mich at 379.

Haugen's testimony had characteristics in common with the testimony characterized in *Peterson* as improper vouching. His testimony established that it is possible for an individual to make a false sexual assault allegation, even if it happens rather infrequently. This fact,

---

[2] He stated, "Yes, oftentimes I'll tell people that I don't believe them and I believe the other person because the facts bear that out."

-4-

depending on how it was viewed by the jury, either bolstered or discredited MH's testimony. Notably, Haugen made clear that he never interviewed MH and that his testimony was entirely based on his research and his experience practicing in the field of psychology. Similarly, Haugen specifically stated that his testimony regarding false sexual assault allegations was based entirely on his experience with his own patients. At no point did Haugen extrapolate his testimony in order to establish the frequency of false sexual assault allegations in the general population, which is what occurred in *Peterson*, to establish a probability that a particular sexual assault allegation was false or to assert the likelihood that MH's particular allegations were false or true. As a result, if the jury weighed this factor as enhancing as opposed to detracting from MH's credibility, it is unlikely that the jury would have given Haugen's testimony significant weight in assessing the credibility of MH's sexual assault claim. The error did not affect defendant's substantial rights. In addition to Haugen's own statement that his testimony was not based on the facts of this case, the lower court specifically instructed the jury to view his testimony not as direct evidence or to infer that [MH] had been telling the truth, but "only for the limited purpose of deciding whether [MH's] acts and words after the alleged crime were consistent . . . with those of sexually abused children." Again, "jurors are presumed to follow their instructions." *Graves*, 458 Mich at 486. Reversal is unwarranted.

Regarding Wise's testimony, we note that the credibility contest between MH and defendant was the central issue in this case. The videotaped recording was relevant because it allowed the jury to assess defendant's credibility based on his reaction and responses to Wise's questions. Wise's testimony regarding his interview techniques was necessary because it contextualized the interview for the jury. Wise's testimony was not unfairly prejudicial. Contrary to defendant's assertion, Wise did not implicitly vouch for MH's credibility. While Wise did state that he used particular interview techniques depending on whether "the facts bear . . . out," he clarified that his interview techniques are not based on his personal opinion in a case. Wise's testimony clearly implied that he will tell a suspect that he believes a victim even if he does not believe that fact to be true. As a result, it is unlikely that the jury would have construed Wise's testimony as an endorsement of MH's credibility. In addition, the trial court instructed the jury that Wise's statements during the interview were not evidence and were "just there to give meaning to any responses by the Defendant . . . ." We find no basis for reversal.

## IV. SENTENCING

At sentencing, the lower court assessed 15 points for OV 8 over defendant's objection, evidently finding that MH was asported to another place of greater danger or to a situation of greater danger when defendant committed the offense. Under the 1998 sentencing guidelines, defendant's total offense variable score placed him within a sentencing range of 51 to 85 months. However, the lower court sentenced defendant outside the guidelines range, to a term of 150 to 300 months. The lower court stated on the record:

> After listening to the testimony, I am not convinced that a sentence within this guideline range is appropriate, given all of the circumstances.
>
> And the reason for that, and I'm going to deviate from these guidelines, is because I believe that they -- they do not adequately take into account the extent of the sexual abuse upon this young, young girl that you -- you imposed upon her.

They simply don't take into account the fact that this was an ongoing abuse for, what, a couple years -- a year-and-a-half, somewhere thereabouts? It doesn't take into account the extent of her unique vulnerability at -- at the point in time that she was abused.

Yes, you -- you were scored points here for a vulnerable -- there being a vulnerable victim, but I don't think that the -- the guidelines adequate -- adequately take into account just her unique circumstances and how vulnerable she really was at the time that you abused her over the course of this year-and-a-half.

Based on the facts of this case, the circumstances of this case, the -- the -- after reviewing the report, listening to the victim, who's lived with this -- lived with this by herself for years before coming forward, I'm going to sentence you to a term of imprisonment within the custody of the Michigan Department of Corrections of not less than 150 months, nor more than 300 months . . . .

First, defendant argues that the lower court erred in assessing 15 points under OV 8. We disagree. Defendant preserved this issue by raising it at sentencing. *People v Jackson*, 487 Mich 783, 791; 790 NW2d 340 (2010). We note that the lower court's factual findings concerning sentencing decisions must be supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). Although the trial court's findings of fact are reviewed for clear error, the interpretation and application of the statutory sentencing guidelines are legal questions subject to de novo review. *Id*.

Under OV 8, the lower court must score 15 points where a "victim was asported to another place of greater danger or to a situation of greater danger or was held captive beyond the time necessary to commit the offense[.]" MCL 777.38(1)(a). "[T]here is no requirement that the movement itself be forcible. Rather, the only requirement for establishing asportation is that the movement not be incidental to committing an underlying offense." *People v Spanke*, 254 Mich App 642, 647; 658 NW2d 504 (2003).

Defendant did move MH to a place of greater danger in order to commit the sexual assault. MH specifically testified that when she returned home from school she would attempt to leave defendant's van, but defendant would push her back inside and direct her to the rear bench seat. MH further testified that the van had curtains. Therefore, evidence supports that defendant moved MH to a location where he could commit the crime "secreted from observation by others." *Id*. at 648.

Finally, defendant argues that the lower court erred in departing from the sentencing guidelines. We review for clear error the reasons given for a departure. *People v Smith*, 482 Mich 292, 300; 754 NW2d 284 (2008). "The conclusion that a reason is objective and verifiable is reviewed as a matter of law." *Id*. "Whether the reasons given are substantial and compelling enough to justify the departure is reviewed for an abuse of discretion, as is the amount of the departure." *Id*. "A trial court abuses its discretion if the minimum sentence imposed falls outside the range of principled outcomes." *Id*.

Under MCL 769.34(3), the lower court may depart from the sentencing guidelines for substantial and compelling reasons, articulated on the record. "Substantial and compelling reasons for departure exist only in exceptional cases." *Smith*, 482 Mich at 299. They must be objective and verifiable, they must be of considerable worth in determining the length of the sentence, and they should keenly or irresistibly grab the court's attention. *Id*. In addition, the lower court may not base a departure on an offense characteristic already considered in determining the appropriate sentence range unless the court finds from the record that "'the characteristic has been given inadequate or disproportionate weight.'" *Id*. at 300, quoting MCL 769.34(3)(b). "[F]or a departure to be justified, the minimum sentence imposed must be proportionate to the defendant's conduct and prior criminal history." *Smith*, 482 Mich at 300. As a result, the lower court must articulate substantial and compelling reasons for its *particular* departure. *Id*. at 303. The lower court's justification "must be sufficient to allow for effective appellate review." *Id*. at 304 (citation and quotation marks omitted). "[I]f it is unclear why the trial court made a particular departure, an appellate court cannot substitute its own judgment about why the departure was justified." *Id*.

The lower court provided substantial and compelling reasons for an upward departure from the sentencing guidelines. First, it relied on the fact that defendant sexually abused MH repeatedly for a very long period. This fact is objective and was verified by MH's testimony. In addition, this fact was not adequately addressed in defendant's minimum recommended sentence, considering he was only charged with and convicted of one count of CSC I. That a defendant committed the abuse over such a long period of time is "of considerable worth in determining the defendant's minimum sentence." See *id*. at 301. Second, the lower court relied on the fact that MH was a particularly vulnerable victim. Unlike a typical child victim of sexual assault, MH came to this country with only one family member and could not speak English well. As a result, MH was in a particularly helpless position. This fact is also objective and was verified by MH's testimony.

Finally, the substantial and compelling reasons stated on the record were sufficient to justify the lower court's particular sentencing departure. Defendant's recommended minimum sentence fell within a range of 51 to 85 months. The lower court increased the minimum sentence to 150 months. Defendant's minimum sentence is therefore only half the 25-year minimum sentence now imposed on individuals convicted of CSC I under the factual circumstances of this case (victim less than 13 and perpetrator 17 or older). See MCL 750.520b(2)(b). That the Legislature has mandated such a high minimum sentence for CSC I convictions is itself evidence of the seriousness of the crime. Furthermore, based on the substantial and compelling reasons stated on the record, we conclude that the sentence imposed upon defendant is proportional to the seriousness of his crime.

We acknowledge that in *People v Smith*, 482 Mich 292, 303, 310; 754 NW2d 284 (2008), the Supreme Court concluded that the trial court had failed to explain adequately the extent of the departure when it imposed a sentence 15 years longer than the top of the guidelines range. The Supreme Court stated that "it is not readily apparent why such a substantial departure is warranted on the basis of [the reasons given]." *Id*. at 310-311. The Court stated that it could not discern "why the trial judge selected a minimum sentence so far in excess of the recommended guidelines range." *Id*. at 311. We decline to find *Smith* controlling because the departure here

was approximately 5 1/2 years, not 15 years. It is readily apparent to us why the court would depart to this extent, especially given the continual and long-term abuse inflicted on the victim.

   Affirmed.

                              /s/ Patrick M. Meter
                              /s/ Michael J. Riordan