*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ANTHONY JEFFREY VOGEL,

        Defendant-Appellant.

UNPUBLISHED
September 28, 2023

No. 359936
Ogemaw Circuit Court
LC No. 19-005320-FH

Before: SHAPIRO, P.J., and M. J. KELLY and CAMERON, JJ.

PER CURIAM.

Defendant, Anthony Vogel, appeals by right his jury-trial convictions of two counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a). The trial court sentenced Vogel under MCL 750.520b(2)(b) to serve 25 to 50 years' imprisonment for both convictions. We affirm because there are no errors warranting reversal.

## I. BASIC FACTS

When Vogel was 17 years old he sexually assaulted AH, his 10-year-old cousin. AH testified that, on two separate occasions in 2015, Vogel had isolated her in the basement of his mother's home during a family gathering and vaginally penetrated her with his penis. She did not tell anyone because she was afraid of what would happen to her, to Vogel, and to the relationship between her family and Vogel's family. As a result, she did not disclose the assaults until 2018.

In addition to AH's testimony—and over defense objection—the trial court allowed the prosecution to introduce other-acts evidence pursuant to MCL 768.27a at trial. First, AH testified that, in October 2014, Vogel had penetrated her vagina with his penis in the basement of his mother's home while everyone else was outside at a family gathering. Second, AH's older sister testified that Vogel had sexually assaulted her at his mother's home on a regular basis for approximately five years. She explained that Vogel had digitally penetrated her vagina when she was approximately eight or nine years old and he was approximately 12 or 13 years old after he had isolated her in the woods on his mother's property. His assaults eventually progressed to oral and vaginal penetration, including an incident in 2015 during which Vogel had vaginally penetrated her with his penis while they were alone in the basement. At the time, she was 12 or

-1-

13 years old. AH's sister did not immediately report the assaults because, like AH, she was also afraid of what would happen to her, Vogel, and the relationship between their families. Finally, an unrelated woman testified that when she was 13 years old and Vogel was 19 years old, Vogel had vaginally penetrated her with his penis in his truck after he had gotten his truck struck in the snow on an isolated backroad. Vogel eventually pleaded guilty to third-degree criminal sexual conduct.

Vogel was convicted by a jury of two counts of CSC-I, and, as indicated above, was sentenced to 25 to 50 years' imprisonment on both convictions. This appeal follows.

## II. OTHER-ACTS EVIDENCE

### A. STANDARD OF REVIEW

Vogel argues that MCL 768.27a unconstitutionally violates the separation of powers because the statute amounts to a legislative intrusion on the judiciary's power to write the rules of evidence. He also contends that the trial court abused its discretion by admitting other-acts evidence because the testimony was not admissible under MRE 403. Questions of constitutional law are reviewed de novo. *People v Burkett*, 337 Mich App 631, 635; 976 NW2d 864 (2021). The court's decision to admit evidence is reviewed for abuse of discretion. *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019).

### B. ANALYSIS

Generally, the admissibility of evidence of other crimes is governed by MRE 404(b). However, MCL 768.27a sets forth an exception to MRE 404. As relevant to this case,[1] MCL 768.27a provides in pertinent part that "in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant."

Vogel first contends that MCL 768.27a is an unconstitutional violation of separation-of-powers principles because, by enacting the statute, the Legislature has permitted the admission of evidence that MRE 404(b) prohibits. However, as conceded by Vogel, our Supreme Court has already determined that MCL 768.27a "does not impermissibly infringe on this Court's authority regarding rules of practice and procedure under Const 1963, art 6, § 5." *People v Watkins*, 491 Mich 450, 455-456, 475-477; 818 NW2d 296 (2012). Accordingly, our Supreme Court has already rejected Vogel's argument, and we must adhere to that analysis. See *People v Armisted*, 295 Mich

---

[1] A " '[m]inor' is any "individual less than 18 years of age." MCL 768.27a(2)(b). " 'Listed offense' means that term as defined in section 2 of the sex offenders registration act [(SORA)], 1994 PA 295, MCL 28.722." SORA defines a " '[l]isted offense' " as a "tier I, tier II, or tier III offense." MCL 28.722(i). CSC-I constitutes a tier III offense. MCL 28.722(v)(*iv*).

App 32, 53; 811 NW2d 47 (2011) ("[T]his Court is without authority to reverse decisions of the Michigan Supreme Court.").[2]

Next, Vogel asserts that the trial court abused its discretion by admitting the other-acts evidence because the testimony was unduly prejudicial. The purpose of MCL 768.27a is "to address a substantive concern about the protection of children and the prosecution of persons who perpetrate certain enumerated crimes against children and are more likely than others to reoffend." *Watkins*, 491 Mich at 476. However, the evidence must survive scrutiny under MRE 403 before it can be admitted. *Id*. at 481. MRE 403 provides that relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Our Supreme Court enumerated several considerations that a court may evaluate when determining whether to exclude other-acts evidence under MRE 403. *Watkins*, 491 Mich at 487. The Court explained:

> These considerations include (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. [*Id*. at 487-488.]

"[W]hen applying MRE 403 to evidence admissible under MCL 768.27a, courts must weigh the propensity inference in favor of the evidence's probative value rather than its prejudicial effect." *Id*. at 487.

In this case, the trial court thoroughly analyzed each of the *Watkins* factors and provided substantial reasoning as to why the other-acts evidence survived scrutiny under MRE 403. First, the charged offenses and the other acts were substantially similar. Both AH and her sister are Vogel's cousins. He first assaulted them when they were each approximately nine or 10 years of age. He assaulted the unrelated girl when she was approximately 13 years old. There was a six-year age gap between Vogel and AH, a six-year age gap between Vogel and the unrelated girl, and a four-year age gap between Vogel and the AH's sister. All of the incidents of sexual assault described by AH and her sister involved Vogel sexually assaulting them while they were isolated from others during family gatherings at Vogel's home; the incident described by the unrelated girl involved Vogel isolating her on a secluded road in his truck. Vogel vaginally penetrated AH and her sister on multiple occasions, and he vaginally penetrated the unrelated girl. Though there was no familial relationship between Vogel and the unrelated girl, the charged offenses and the acts

---

[2] Moreover, this Court has also determined that MCL 768.27a does not violate the principles of separation of powers" because the statute is "a substantive rule of evidence because it does not principally regulate the operation or administration of the courts." *People v Pattison*, 276 Mich App 613; 741 NW2d 558 (2007); see also *People v Muniz*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 355977); slip op at 10-11 (recognizing that this Court is bound by both *Watkins* and *Pattison*).

against the young woman "are not so dissimilar as to preclude admission of the other-acts evidence." *People v Solloway*, 316 Mich App 174, 194; 891 NW2d 255 (2016).

Temporal proximity also weighs in favor of admission because the charged offenses and the other acts principally took place within approximately one or two years of one another. Frequency also weighs in favor of admission. AH's testimony that Vogel had assaulted her three times over the course of one year, the testimony of AH's sister that Vogel had regularly assaulted her for approximately five years, and the unrelated girl's testimony that Vogel had sexually assaulted her within a year of Vogel assaulting AH and her sister indicate that Vogel committed the acts with relative frequency. See *People v Hoskins*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 359103); slip op at 6-7.

Because neither party identified any intervening acts, this factor weighs neither for nor against admission. See *Solloway*, 316 Mich App at 195 (holding that the absence of intervening acts does not weigh against admissibility). However, reliability weighs in favor of admission because there is nothing to indicate that the other-acts evidence was more or less reliable than AH's allegations that constituted the charged offenses. Moreover, that there were multiple witnesses—AH, her sister, and the unrelated girl—to testify about other acts. Each girl provided fairly consistent accounts of the assaults. See *People v Beck*, 510 Mich 1, 22 n 10; 987 NW2d 1 (2022).

Finally, there was a "need" for additional evidence because there were no eyewitnesses to any of the assaults, and neither AH nor her sister reported the assaults until approximately three years after they had occurred. See *Solloway*, 316 Mich App at 196 (holding that there was a need for the other-acts evidence beyond the victim's and the defendant's testimony because there were no eyewitnesses to corroborate the victim's testimony). The other-acts evidence also lends to AH's credibility, and we have held that other-acts evidence may be needed to supplement a victim's testimony. See *Hoskins*, ___ Mich App at ___; slip op at 7.

Given that all but one of the *Watkins* factors weigh in favor of the admission of the other-acts evidence, and recognizing that propensity must be weighed in favor of the evidence's admission, we conclude that the trial court did not abuse its discretion by admitting the other-acts evidence.

## III. HEARSAY AND RIGHT TO PRESENT A DEFENSE

### A. STANDARD OF REVIEW

Vogel asserts that he was denied his constitutional right to present a complete defense because the trial court abused its discretion by excluding his statement to a police officer denying the sexual assault allegations. Because Vogel did not raise this issue before the trial court, our review is for plain error affecting Vogel's substantial rights. *People v King*, 297 Mich App 465, 472-473; 824 NW2d 258 (2012).

## B. ANALYSIS

Vogel first asserts that the rule of curative admissibility permitted him to introduce a police officer's testimony regarding his statements because the prosecutor had selectively introduced other statements made by Vogel during the interview and ultimately misled the jury into believing that he was uncooperative during the investigation. When this Court adopted the rule of curative admissibility, we emphasized that "the admission of such evidence is not a matter of absolute right, but rests in the sound discretion of the court." *Grist v Upjohn Co*, 16 Mich App 452, 483; 168 NW2d 389 (1969) (quotation marks and citation omitted). We conclude that the rule of curative admissibility is not applicable in this case. The prosecutor introduced Vogel's statements to the officer under MRE 801(d)(2) (excluding statements by a party-opponent from being defined as hearsay). Additionally, the prosecutor introduced Vogel's statement that he was "very close" to AH's father (who is Vogel's maternal uncle) to show family dynamics before and after AH had disclosed the assaults. Although the officer testified that she attempted to contact Vogel several times about completing an interview, she also reiterated that Vogel did not have to speak to her if he did not want to and that he voluntarily chose to participate in the interview. Thus, the officer's testimony as it related to Vogel's interview was largely procedural rather than substantive. On appeal Vogel fails to explain how the officer's testimony or the prosecutor's references to his statement that he was close to his uncle prior to the disclosures misled the jury. Given this, the court was within its discretion to refuse to allow Vogel to question the officer about Vogel's self-serving hearsay statements denying the assault allegations.

Vogel next asserts that he was denied his constitutional right to present a complete defense, but this right "is not unlimited and is subject to reasonable restrictions." *King*, 297 Mich App at 473. A defendant "must still comply with established rules of procedure and evidence designed to assure both fairness and reliability on the ascertainment of guilt and innocence," and the "Michigan Rules of Evidence do not infringe on a defendant's constitutional right to present a defense unless they are arbitrary or disproportionate to the purposes they are designed to serve." *Id*. at 474 (quotation marks and citations omitted). Vogel has not argued that the hearsay rules are arbitrary or disproportionate. Nor was Vogel denied the ability to raise and explore his underlying claim of innocence. It is clear from the record that, even with the exclusion of Vogel's statements to the officer in which he denied the assault allegations, Vogel was allowed to present photographs and the testimony of several relatives, which, if believed by the jury, would have provided Vogel with a complete defense to the charges. Additionally, all of the prosecutor's witnesses were subject to cross-examination, and Vogel used cross-examination to emphasize inconsistencies in AH's version of events. Accordingly, Vogel has not demonstrated that his right to present a defense was denied.

## IV. PROSECUTORIAL MISCONDUCT

## A. STANDARD OF REVIEW

Vogel argues that he was denied a fair trial because the prosecutor committed prosecutorial misconduct by asking several improper questions during cross-examination of two defense witnesses. Because he did not object to the prosecutor's remarks at trial, our review is for plain error affecting Vogel's substantial rights. See *People v Bennett*, 290 Mich App 465, 475-476; 802 NW2d 627 (2010).

## B. ANALYSIS

"The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial." *People v Brown*, 279 Mich App 116, 134; 755 NW2d 664 (2008). Claims of prosecutorial misconduct are reviewed "on a case-by-case basis by examining the record and evaluating the remarks in context . . . ." *People v Mann*, 288 Mich App 114, 119; 792 NW2d 53 (2010) (quotation marks and citation omitted; ellipsis in original). Prosecutors are "accorded great latitude regarding their arguments and conduct." *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995) (quotation marks and citation omitted). However, a prosecutor may not ask "a witness to comment or provide an opinion on the credibility of another witness, because credibility matters are to be determined by the jury." *People v Dobek*, 274 Mich App 58, 71; 732 NW2d 546 (2007).

During cross-examination of Vogel's father, the prosecutor pressed Vogel's father about the rules that he had imposed at the annual "trash can dinner" family gatherings. The prosecutor then asked:

> *Q*. Okay. And if [a woman] was to testify in 2015, which trash can party, which is after 2012, that she saw [defendant] in the basement during the trash can party during the day playing video games, that would've been a lie?
>
> *A*. You're asking me to speak for her?
>
> *Q*. I'm asking you was [Vogel] allowed to play video games, if he didn't have a key, in the basement during the trash can party?
>
> *A*. Yes. He would've had to come see us to get in the house.
>
> *Q*. Okay. So if she said she saw him in there playing video games, how did she get in the house?
>
> *A*. We have seven windows that go around the basement.
>
> *Q*. Mm-hmm.
>
> *A*. I have no idea how she seen him.
>
> *Q*. Okay. So she walked around the house and was looking in the windows to see who was in the basement?
>
> *A*. You have to ask her that.

The woman referenced by the prosecutor was not called as a witness and did not testify. Additionally, during cross-examination of one of Vogel's cousins, the prosecutor asked:

> *Q*. Now, did you have a conversation with [AH's mother] about it?
>
> *A*. No.

> *Q*. Did you ever go to [her] place of work and tell her that you understand why law enforcement's evolved—involved because [Vogel] told you some stuff?
>
> *A*. [Vogel] never told me anything. So that's a lie.
>
> *Q*. Okay. So if she said that that happened, that would've been a lie?
>
> *A*. Yes, it would have been a lie.

Despite the witness's repeated denials that he had not spoken to the AH's mother about the allegations, the prosecutor continued to press him on the matter.

As conceded by the prosecution on appeal, the prosecutor's questions of Vogel's father and Vogel's cousin were improper. Indeed, it is a long-standing and fundamental rule that a prosecutor may not ask another witness to comment or opine regarding the credibility of another witness, and it is hard to conceive that any assistant prosecuting attorney would be unfamiliar with that prohibition. *Id*. Moreover, although defense lawyers should also be familiar with this rule and should be ready to object should a prosecutor move from striking "hard blows" to striking "foul" ones, a defense lawyer's failure to object does not diminish the prosecutor's obligation to refrain from asking a witness to comment on the credibility of another witness.

Nevertheless, despite the prosecutor's blatantly improper questions, Vogel has not shown that the errors were outcome-determinative. See *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). AH, her sister, and the unrelated girl all testified about the sexual assaults in great detail, and a sexual assault victim's testimony does not need to be corroborated by other evidence. See MCL 750.520h.[3] Regardless, Vogel's conviction for sexually assaulting the unrelated girl had been introduced as evidence. All of the prosecutor's witnesses were subject to cross-examination, and Vogel's lawyer vigorously cross-examined the witnesses to emphasize inconsistencies in AH's allegations. Indeed, several of Vogel's family members testified that Vogel would have been unable to sexually assault AH at the times and locations that she alleged because Vogel was under constant supervision, because he was unable to enter the home during the gatherings, or because AH was not at the home. Additionally, Vogel's lawyer stressed AH's delay in reporting the assaults. Given the testimony presented by both parties and the jury's guilty verdict, it is clear that the jury found the prosecution's witnesses to be more credible. This Court does not interfere with witness credibility determinations, which are questions of fact left up to the jury. See *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008). Vogel has not demonstrated that it was the prosecutor's improper questions during its cross-examination of Vogel's father and cousin, rather than the evidence presented, that constituted the basis for the jury's verdict. Further, unpreserved claims of prosecutorial misconduct do not warrant reversal unless a curative instruction would have been insufficient to alleviate the harm. *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008). Here, Vogel has failed to show that a curative instruction would

---

[3] " 'Victim' means the person alleging to have been subjected to criminal sexual conduct." MCL 750.520a(s). AH, her sister, and the unrelated girl all alleged that they had been subjected to criminal sexual conduct by Vogel, so all of them constitute victims within the meaning of the statute.

have been an insufficient remedy. On this record, Vogel has not shown that the prosecutor's improper questions affected his substantial rights. See *Carines*, 460 Mich at 763.

## V. 25-YEAR MANDATORY MINIMUM SENTENCE

### A. STANDARD OF REVIEW

Vogel contends that the 25-year mandatory minimum sentence prescribed by MCL 750.520b(2)(b) is cruel or unusual punishment when applied to an individual who was 17 years old at the time of the offenses. However, as conceded by Vogel, this Court determined in *People v Payne*, 304 Mich App 667, 676; 850 NW2d 601 (2014), that the 25-year mandatory minimum prescribed by MCL 750.520b(2)(b) is neither cruel nor unusual punishment when it is applied to a juvenile offender. *Payne* is a precedentially binding case, and we are bound by that decision. MCR 7.215(C)(2), (J)(1).[4]

Affirmed.

/s/ Michael J. Kelly
/s/ Thomas C. Cameron

---

[4] Vogel argues that MCL 750.520b(2)(b) should not impose a 25-year mandatory minimum sentence on a 17-year-old who is convicted of a CSC-I offense given the developmental differences between juveniles and adults. While new research and empirical studies should always be welcomed, such public policy considerations and recommendations for the purpose of policy revisions should be directed at the Legislature rather than the courts. *People v McIntire*, 461 Mich 147, 152; 599 NW2d 102 (1999) (stating that a court's "judicial role precludes imposing different policy choices than those selected by the Legislature"); *People v Morris*, 450 Mich 316, 336; 537 NW2d 842 (1995) ("[J]udicial misgivings regarding the wisdom of the policy do not provide a legal foundation for overriding legislative intent . . . . The wisdom of the policy is a political question to be resolved in the political forum. To reach a contrary result would be simply to repudiate the legislative choice.").