*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ZHAVIAN KAMANI CLEVELAND, also known as
ZHAVIAN KAMNI CLEVELAND,

Defendant-Appellant.

UNPUBLISHED
December 09, 2024
12:12 PM

No. 365016
Jackson Circuit Court
LC No. 2021-000358-FC

Before: GADOLA, C.J., and K. F. KELLY and REDFORD, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions for (1) first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(c) (sexual penetration occurs under circumstances involving the commission of a felony); (2) aggravated child sexually abusive activity, MCL 750.145c(2)(b); (3) aggravated possession of child sexually abusive material (CSAM), MCL 750.145c(4); and (4) using a computer to commit a crime, MCL 752.796 and MCL 752.797(3)(f). The trial court sentenced defendant to serve (1) 18 to 40 years, (2) 11 to 20 years, (3) 11 to 20 years, and (4) 6 to 10 years in prison, respectively. The trial court determined that Counts 1, 2 and 4 would be served consecutively to each other, and Count 3 would be served concurrently to all counts. We affirm defendant's convictions, but remand for the trial court to articulate its rationale for imposing each consecutive sentence or to resentence defendant.

## I. BASIC FACTUAL BACKGROUND

Defendant and KR met in July 2018, when KR was 13 years old and defendant was 21 years old. They began dating soon after. KR initially lied about her age, telling defendant that she was 16 years old; however, on her fifteenth birthday, in June 2020, KR admitted her age to defendant. Defendant continued dating KR after she admitted her actual age. KR testified that she had sex with defendant multiple times. KR sent explicit pictures and videos of herself to defendant. An explicit picture of KR from May 2019, and a "still shot" from a video made in approximately March 2020, which depicted defendant engaging in vaginal intercourse with KR, were both admitted into evidence.

-1-

In July 2020, defendant physically assaulted KR. An argument ensued when defendant misplaced his phone and wallet after he and KR brought food back to his apartment. Defendant pushed KR to the ground, hit her, dragged her by her hair, stomped on her, and shoved food in her mouth. Police officers arrived at the apartment, and, after finding out that KR was 15 years old, took her home to her father. KR's father convinced her to tell the officers the truth, and the officers took pictures of her injuries, which were admitted at trial. Defendant and KR's relationship ended after the physical assault.

In December 2020, three officers interviewed defendant, during which he stated that he and KR dated for a couple years, but he "stopped messing with her" when he found out her age. Defendant admitted to having "a couple" nude pictures and videos of KR, in which KR was 14 or 15 years old; however, defendant stated that he asked KR for the pictures and videos before he knew her age. Defendant also admitted that he had sex and oral sex with KR multiple times before he knew her age. Officers found a video of CSAM involving KR on defendant's cell phone.

Defendant was convicted and sentenced, as stated earlier. This appeal followed.

## II. OTHER-ACTS EVIDENCE

First, defendant argues that the trial court abused its discretion by admitting other-acts evidence of child sexual abuse under MCL 768.27a because it was unduly prejudicial. Because the trial court's decision to admit the other-acts evidence was not outside the range of reasonable and principled outcomes, we disagree.

The challenged other-acts evidence is the testimony of MH, admitted at trial under MCL 768.27a. MH testified that, in April 2020, when she was 14 years old and defendant was 23 years old, she met defendant through a friend. Upon meeting defendant, MH informed defendant that she was 14 years old. MH and the friend went to defendant's house. MH's friend was eventually kicked out of defendant's house after arguing with him. When MH tried to leave defendant's bedroom, defendant hit and choked her. Defendant had penetrative sex with MH against her will and placed his penis inside her mouth. MH testified that these behaviors happened repeatedly over four days before she could escape.

A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *People v Watkins*, 491 Mich 450, 467; 818 NW2d 296 (2012). "A court abuses its discretion when it chooses an outcome that is outside the range of reasonable and principled outcomes." *People v Uphaus (On Remand)*, 278 Mich App 174, 181; 748 NW2d 899 (2008). The determination whether the probative value of evidence is substantially outweighed by its prejudicial effect is "best left to a contemporaneous assessment of the presentation, credibility, and effect of the testimony . . . ." *People v Magyar*, 250 Mich App 408, 416; 648 NW2d 215 (2002) (quotation marks and citation omitted). We review de novo whether the trial court properly applied the law governing the admission of evidence. See *People v Roper*, 286 Mich App 77, 91; 777 NW2d 483 (2009).

MCL 768.27a provides:

(1) Notwithstanding section 27, in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant

-2-

committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant. If the prosecuting attorney intends to offer evidence under this section, the prosecuting attorney shall disclose the evidence to the defendant at least 15 days before the scheduled date of trial or at a later time as allowed by the court for good cause shown, including the statements of witnesses or a summary of the substance of any testimony that is expected to be offered.

(2) As used in this section:

(a) "Listed offense" means that term as defined in section 2 of the sex offenders registration act, 1994 PA 295, MCL 28.722.

(b) "Minor" means an individual less than 18 years of age.

In *Watkins*, 491 Mich at 470-471, our Supreme Court explained that MCL 768.27a provides an exception to MRE 404(b)[1] permitting admission of other-acts evidence when a defendant is charged with sexual misconduct against a minor. Evidence is admissible under MCL 768.27a "for its bearing on any matter to which it is relevant," including "to show a defendant's character and propensity to commit the charged crime." *Id*. at 470 (quotation marks omitted). To be admissible, defendant's prior conduct and the charged offense need only be "of the same general category." *People v Duenaz*, 306 Mich App 85, 101; 854 NW2d 531 (2014) (quotation marks and citation omitted).

Nevertheless, evidence admissible under MCL 768.27a may "be excluded under MRE 403 if 'its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.' " *Watkins*, 491 Mich at 481. "[W]hen applying MRE 403 to evidence admissible under MCL 768.27a, courts must weigh the propensity inference in favor of the evidence's probative value rather than its prejudicial effect." *Id*. at 487. The trial court may consider the following list of non-exhaustive factors when determining whether to exclude the other-acts evidence:

(1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. [*Id*. at 487-488.]

Defendant was convicted of CSC-I, a listed offense under MCL 750.520b(1)(c). MCL 28.722(v)(*iv*). The challenged other-acts evidence involved the forcible sexual penetration of a 14-year-old while being falsely imprisoned, conduct that would constitute CSC-I. Defendant does

---

[1] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024. See ADM File No. 2021-10, 512 Mich lxiii (2023). We rely on the version of the rules in effect at the time of trial.

not dispute that the challenged evidence qualified for admission under MCL 768.27a, but he argues that the trial court should have excluded the evidence under MRE 403 as unfairly prejudicial.

In this case, the trial court's MRE 403 analysis focused on the first factor listed in *Watkins*. The trial court explained: "I don't think there is unfair prejudice to the defense by introducing testimony of another 14[-]year[-]old victim, the exact same age, a young woman that was incapable as a matter of law of engaging in sexual relations." On appeal, defendant argues that the incidents with KR and MH were too dissimilar because KR was in a dating relationship with defendant and testified that she willingly[2] had sex with defendant multiple times; whereas, MH just met defendant and testified that defendant held her against her will and forcibly raped her over four days.

Defendant is correct that the prior sexual assault involving forcible penetration was not identical with the charged offense; however, the other-acts evidence does not need to be identical with the charged offense to be admissible. See *Duenaz*, 306 Mich App at 101. Contrary to defendant's argument, the similarities between these incidents weighed in favor of admitting the other-acts evidence. Both incidents involved defendant, at age 23, engaging in penetrative sex with 14-year-old girls. Similarly, the temporal proximity of the incidents, as well as the absence of intervening acts, weigh in favor of admission because both incidents occurred when defendant was 23 years old. See *Watkins*, 491 Mich at 487-488. Defendant has not argued that the other-acts evidence was unreliable. Under these circumstances, defendant has not shown that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. Accordingly, the trial court did not abuse its discretion by admitting the evidence under MCL 768.27a.[3]

## III. EVIDENCE OF GANG AFFILIATION

Next, defendant argues that the trial court abused its discretion by admitting gang-related testimony because trial counsel did not "open the door" to the evidence and the evidence was admitted in violation of MRE 404(b). Alternatively, defendant argues, if this Court concludes that trial counsel opened the door to the gang-related testimony, then trial counsel was ineffective for

---

[2] Although defendant characterizes KR as willing to engage in sexual activity with him at the age of 14, the age of consent in Michigan is 16 years old. See MCL 750.520b; *People v Czarnecki*, ___ Mich App ___, ___; ___ NW3d ___ (Docket No. 348732); (BOONSTRA, J., concurring); slip op at 2. The sexual penetration of a person under the age of 16 is a strict-liability offense. *People v Nyx*, 479 Mich 112, 140-141; 734 NW2d 548 (2007) (MARKMAN, J., concurring).

[3] In his appellate brief, defendant briefly mentions that the prosecution also moved to admit other-acts evidence involving domestic violence toward KR; however, defendant failed to develop any argument related to the motion. To the extent that defendant has argued that evidence of domestic violence defendant committed against KR should have been excluded at trial, defendant has abandoned this argument on appeal. See *People v Kevorkian*, 248 Mich App 373, 389; 639 NW2d 291 (2001) ("Failure to brief a question on appeal is tantamount to abandoning it.") (quotation marks and citation omitted).

opening the door to the evidence. We conclude that defendant is not entitled to relief regarding either argument.

## A. FACTUAL BACKGROUND

The challenged evidence consists of Probation Officer Erin Miller's testimony that the phrase "Woe World" was affiliated with a gang called "Murder 40, Murder 45." Earlier in the proceedings, a picture of defendant's tattoos, including his tattoo of the phrase "Woe World," was admitted into evidence. Probation Officer Miller's testimony was admitted in response to a question trial counsel posed to KR on cross-examination. During direct examination of KR, no reference was made to gangs or defendant's alleged affiliation with a gang. However, in an attempt to discredit KR, trial counsel asked her if, during the argument that led to defendant physically assaulting her, KR "tried to implicate that [defendant] was in a gang." KR denied making this implication, but she testified that defendant told her that he was in a gang. Trial counsel did not request for the trial court to strike KR's response.

Outside the presence of the jury, the prosecution used trial counsel's cross-examination of KR as a basis, in addition to already admitted photographic evidence of defendant's "Woe World" tattoo, to ask the trial court for permission to question Probation Officer Miller regarding the meaning of the phrase "Woe World." The prosecution sought to admit testimony of defendant's alleged gang affiliation to rehabilitate KR's credibility from trial counsel's implication that she lied about the reason behind the domestic-violence incident. In response to the prosecution's request, trial counsel argued that his question was not meant to imply that defendant was in a gang, but to show that KR "was trying to have him killed by the people who were in a gang." The trial court permitted the line of questioning after explaining that trial counsel "cracked" the door.

## B. STANDARDS OF REVIEW

As previously stated, this Court reviews a trial court's decision to admit or exclude evidence for an abuse of discretion. *Id*. at 467.

"The question whether defense counsel performed ineffectively is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). A trial court's finding is clearly erroneous when, although there is evidence to support it, we are, on the whole record, left with a definite and firm conviction that a mistake was made. *People v Dendel*, 481 Mich 114, 130; 748 NW2d 859 (2008), amended 481 Mich 1201 (2008). Because the trial court did not conduct an evidentiary hearing, our review is limited to errors apparent on the record. See *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007).

## C. ADMISSIBILITY

Defendant frames the challenged evidence as character evidence that does not meet any of the exceptions under MRE 404(b). MRE 404(b) provides, in relevant part, as follows:

> (1) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity,

intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

> (2) The prosecution in a criminal case shall provide written notice at least 14 days in advance of trial, or orally on the record later if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial and the rationale, whether or not mentioned in subparagraph (b)(1), for admitting the evidence. [MRE 404(b)(1)-(2).]

MRE 404, however, is not the correct framework to analyze the admissibility of the challenged evidence. The prosecution did not attempt to admit the evidence under MRE 404(b)(1) and did not file the appropriate notice, MRE 404(b)(2). Because the prosecution sought to admit the evidence in response to trial counsel's question to KR regarding defendant's alleged gang affiliation, the prosecution was not required to provide notice under MRE 404(b)(2).

Instead, the trial court admitted the evidence for the limited purpose of rebuttal under the rule of curative admissibility, more colloquially known as the "opening the door" doctrine. Michigan has adopted the rule of curative admissibility, recognizing that admissibility under the rule is within the discretion of the trial court:

> 'As stated in Corpus Juris, which statement has been quoted and cited by the courts, it frequently happens that evidence which might be inadmissible under strict rules is nevertheless introduced into the case through inadvertence or otherwise, under which circumstances it is held, sometimes as a result of statutory regulation, that the adverse party is entitled to introduce evidence on the same matters lest he be prejudiced. The party who first introduces improper evidence cannot object to the admission of evidence from the adverse party relating to the same matter. However, the admission of such evidence is not a matter of absolute right, but rests in the sound discretion of the court, which will not permit a party to introduce evidence, which should not be admitted, merely because the adverse party has brought out some evidence on the same subject, where the circumstances are such that no prejudice can result from a refusal to go into the matter further.' [*Grist v Upjohn Co*, 16 Mich App 452, 482-483; 168 NW2d 389 (1969), quoting 31A CJS, Evidence, § 190, pp 509-512.][4]

Before trial counsel asked KR if she accused defendant of being in a gang, defendant's alleged affiliation with a gang was irrelevant and inadmissible because there was no allegation that the conduct for which defendant was on trial was gang-related. See MRE 402; *People v Bynum*, 496 Mich 610, 625; 852 NW2d 570 (2014) ("[T]he introduction of evidence regarding a defendant's gang membership is relevant and can assist the trier of fact to understand the evidence

---

[4] Although Court of Appeals opinions dated before November 1, 1990, are not precedentially binding, they may be considered for their persuasive value. MCR 7.215(J)(1); *People v Urbanski*, ___ Mich App ___, ___ n 5; ___ NW3d ___ (2023) (Docket No. 359011); slip op at 9 n 5.

when there is fact evidence that the crime at issue is gang-related.") (quotation marks and citation omitted). However, the challenged testimony became relevant when trial counsel "opened the door" to the testimony by bringing up the typically inadmissible information in an attempt to undermine KR's credibility on cross-examination.

On this record, the trial court did not abuse its discretion by admitting the challenged evidence. On direct examination, KR testified that defendant physically assaulted her after an argument about defendant's lost wallet and phone. Trial counsel's line of questioning on cross-examination implied that KR was lying about the reasons that led to the domestic violence, casting doubt on her credibility and prejudicing the prosecution. The trial court permitted the prosecution to admit limited and brief testimony connecting defendant's "Woe World" tattoo to gang affiliation to rebut that implication. See *Grist*, 16 Mich App at 482-483.

We likewise conclude that the testimony was not unfairly prejudicial under MRE 403's balancing test. As previously explained, evidence may "be excluded under MRE 403 if 'its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.' " *Watkins*, 491 Mich at 481. "MRE 403 is not intended to exclude 'damaging' evidence because any relevant evidence will be damaging to some extent." *People v Baskerville*, 333 Mich App 276, 287; 963 NW2d 620 (2020). "Rather, MRE 403 excludes only *unfairly* prejudicial evidence, meaning there is a serious danger that the jury would give evidence with relatively little logical relevance undue weight," or if the contested evidentiary item "would tend to arouse the jury's emotions to a degree that would preclude proper consideration of the actual merits of the case." *Id*. at 287-288. We doubt that Probation Officer Miller's brief testimony regarding the phrase "Woe World," admitted only in response to trial counsel "opening the door" and not otherwise mentioned at trial, was unduly prejudicial.

We additionally conclude that even if the prosecution improperly questioned Probation Officer Miller regarding the meaning of the phrase "Woe World," the error in admitting evidence was not outcome-determinative. See MCL 769.26; *People v Luckity*, 460 Mich 484, 495; 596 NW2d 607 (1999) (explaining that evidentiary error is grounds for reversal when, "in the context of the untainted evidence," "it is more probable than not that a different outcome would have resulted without the error"). The references to defendant's alleged gang affiliation were limited to trial counsel's question toward KR on cross-examination and Probation Officer Miller's testimony that the phrase "Woe World" was gang affiliated. The parties did not rely on defendant's alleged gang affiliation during closing arguments. Absent the limited reference to defendant's alleged gang affiliation, the untainted evidence overwhelmingly supported defendant's convictions. This evidence included KR's testimony regarding her relationship with defendant, videos of the charged sexual penetration on KR's phone, defendant's inculpatory statements that he engaged in sexual intercourse with KR when she was 14 years old, and CSAM involving KR found on defendant's phone. Defendant is not entitled to relief on this issue.

## D. INEFFECTIVE ASSISTANCE OF COUNSEL

To prove ineffective assistance of counsel, a defendant must show that "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different."

*Trakhtenberg*, 493 Mich at 51; *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001) (quotation marks and citation omitted). "Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim." *Id*. "In examining whether defense counsel's performance fell below an objective standard of reasonableness, a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *Trakhtenberg*, 493 Mich at 52.

Defendant argues that trial counsel was ineffective for questioning KR about defendant's alleged gang affiliation and opening the door to the prosecution's line of questioning. It is likely that trial counsel's performance fell below an objective standard of reasonableness. The record indicates that it was not trial counsel's intent to open the door to admission of Probation Officer Miller's "Woe World" testimony, but to attack KR's credibility. As explained by trial counsel, the line of questioning was a failed attempt to show that KR "was trying to have [defendant] killed by the people who were in a gang." Trial counsel had multiple avenues to attack KR's credibility regarding the charged offenses. Indeed, trial counsel addressed KR's credibility by examining her willingness to lie to her mother about her relationship with defendant. Trial counsel's decision to additionally attack KR's credibility through tangential information related to the uncharged domestic-violence incident needlessly raised the issue of defendant's alleged gang affiliation. We cannot conclude that such a decision was born from sound trial strategy. See *id*.

Nonetheless, for the reasons already discussed, defendant cannot demonstrate that, but for the error, the result of the proceedings would have been different.[5] The mention of defendant's alleged gang affiliation was brief. Outside this evidence, strong circumstantial and direct evidence of defendant's sexual conduct with KR supported the convictions. Accordingly, defendant is not entitled to relief based on his claim of ineffective assistance of counsel.

## IV. CELL PHONE EVIDENCE

Defendant argues that the trial court erred by denying his motion to suppress evidence retrieved from his cell phone on several grounds. First, defendant asserts that the record does not support that he received, read, or heard the conditions listed in his probation order. Second, defendant asserts that the probation order did not unambiguously inform him that he was required to submit to warrantless searches of his cell phone. Third, defendant asserts that the officers that seized and searched his cell phone lacked reasonable suspicion to do so. Defendant is not entitled to relief on any of these grounds.

## A. FACTUAL BACKGROUND

At the time of the events of this case, defendant was on probation for an unrelated offense. Defendant's probation order included a search condition that stated he was subject to warrantless

---

[5] We likewise note that defendant failed to argue, and therefore abandoned, any argument that trial counsel's performance resulted in outcome-determinative prejudice. See *Kevorkian*, 248 Mich App at 389.

searches of his person and property if a field agent has reasonable suspicion to believe that he violated the conditions of his probation. Pursuant to his probation order, defendant's cell phone was seized during a warrantless search. Officers extracted data from the cell phone and found a video of CSAM involving KR in defendant's Google photo application.

Before trial, defendant moved to suppress the evidence seized from his cell phone. At a suppression hearing, Probation Officer Miller testified regarding the circumstances of the warrantless search. She testified that while monitoring defendant's social media activity, she saw a photograph of a young woman's exposed breasts posted on defendant's Facebook page. She thought that the person appeared to be under the age of 18. Probation Officer Miller also testified that she saw screenshots of messages between defendant and KR, including a discussion about sexually transmitted diseases, which led her to believe that defendant and KR were having sex. Probation Officer Miller further discovered that KR was only 14 or 15 years old at the time. Upon reviewing this information, officers seized defendant's cell phone.

## B. STANDARD OF REVIEW

"This Court reviews a trial court's findings of fact at a suppression hearing for clear error and reviews de novo its ultimate decision on a motion to suppress the evidence." *People v Tavernier*, 295 Mich App 582, 584; 815 NW2d 154 (2012). "To the extent that a trial court's ruling on a motion to suppress involves an interpretation of the law or the application of a constitutional standard to uncontested facts, our review is de novo." *People v Tanner*, 496 Mich 199, 206; 853 NW2d 653 (2014) (quotation marks and citation omitted).

## C. PROBATION ORDER

Both the United States Constitution and Michigan's 1963 Constitution protect against unreasonable searches and seizures. US Const, Am IV; Const 1963 art 1, § 11. "In general, searches conducted without both a warrant and probable cause to believe evidence of wrongdoing might be located at the place searched are unreasonable per se." *People v Chandler*, ___ Mich App___, ___; ___ NW3d ___ (2024) (Docket No. 368736); slip op at 3 (quotation marks and citation omitted). Further, subject to several well-delineated exceptions, "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment." *Id*. at ___; slip op at 4 (quotation marks and citation omitted).

One such exception to the warrant requirement is supervision of probationers. *Id*. However, probationers "do not forgo their Fourth Amendment rights in full." *Id*. The United States Supreme Court has emphasized the importance of a signed, written waiver of Fourth Amendment protections and reasonable suspicion in a warrantless search of a probationer's property. See *Griffin v Wisconsin*, 483 US 868, 876; 107 S Ct 3164; 97 L Ed 2d 709 (1987); *United States v Knights*, 534 US 112, 118; 122 S Ct 587; 151 L Ed 2d 497 (2001).

Defendant first argues that the record does not support that he consented to the search condition in his probation order. We disagree. Review of the lower court record shows that defendant accepted the conditions of his probation order.

"[A] waiver of Fourth Amendment protections may be a condition of parole if the person on probation gave their consent to the same and the waiver is reasonably tailored to a defendant's

rehabilitation." *Chandler*, ___ Mich App at ___; slip op at 4 (quotation marks and citation omitted).[6] In *Knights*, 534 US at 118, the United States Supreme Court held that a search condition in a probation order was a "salient circumstance" to be considered when examining whether a defendant's Fourth Amendment rights were violated. In that case, the probationer signed a probation order that stated immediately above his signature, "I HAVE RECEIVED A COPY, READ AND UNDERSTAND THE ABOVE TERMS AND CONDITIONS OF PROBATION AND AGREE TO ABIDE BY SAME." *Id.* at 114 (quotation marks and citation omitted). "The Supreme Court determined that a search of the property of a probationer suspected of involvement in another crime was reasonable under the totality of the circumstances because the probationer signed his probation order and reasonable suspicion supported the search. *Id.* at 118-119.

In this case, defendant's probation order incorporated a search condition, which provides that defendant would "submit to a search of [his] person and property, including but not limited to, [his] vehicle, residence, or computer, without need of a warrant if the field agent has reasonable cause to believe [he has] items which violate the conditions of [his] probation." The search condition was included in a list of conditions on a separate page attached to the probation order. The attachment was incorporated by reference into the probation order. Defendant signed and dated his probation order. Like the probation order in *Knights*, immediately above his signature, the probation order provides in relevant part: "I have read or heard the above order of probation and received a copy. I understand and agree to comply with this order."

Moreover, defendant's probation officer testified that part of her job was to read the probation conditions listed in the attachment to the probationer and to ask the probationer if he or she had any questions. Probation Officer Miller expressly testified that she tells probationers that field agents have a right to search their property without need of a warrant if supported by reasonable suspicion that the probationer violated their probation. The record evidence supports that defendant knew about, and accepted, his diminished rights and attached conditions in the probation order. See *id*.

Relatedly, defendant argues, even if he accepted the terms of his probation order, the search condition itself did not unambiguously inform him that he was required to submit to a warrantless search of his cell phone because it referred to a computer, not a cell phone. This argument lacks merit.

First, defendant ignores that the probation order provides that he would submit to warrantless searches of his "person and property." We hold defendant's cell phone plainly fits under the definition of his "property."

Second, we hold defendant's cell phone qualifies as a computer. The probation order referenced a computer as an example of property after the language "including, but not limited to" in the search condition. Defendant was convicted of using a computer to commit a crime, MCL 752.796 and MCL 752.797(3)(f). Within the meaning of that statute, "computer" is defined as follows:

---

[6] Defendant does not argue that the waiver was not reasonably tailored to his rehabilitation.

> [A]ny connected, directly interoperable or interactive device, equipment, or facility that uses a computer program or other instructions to perform specific operations including logical, arithmetic, or memory functions with or on computer data or a computer program and that can store, retrieve, alter, or communicate the results of the operations to a person, computer program, computer, computer system, or computer network. [MCL 752.792(3).][7]

Defendant had a smart phone. A smart phone is an interactive device that uses computer programs to perform specific operations.

Given that a cell phone meets both the definition of "property" and "computer," the probation order unambiguously provided that defendant's cell phone was subject to the warrantless search.

### D. REASONABLE SUSPICION

Defendant next argues that the officers did not have a reasonable suspicion sufficient to search defendant's cell phone pursuant to his probation order condition. We disagree.

"When an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable." *Knights*, 534 US at 121. "Reasonable suspicion entails something more than an inchoate or unparticularized suspicion or 'hunch,' but less than the level of suspicion required for probable cause." *People v Champion*, 452 Mich 92, 98; 549 NW2d 849 (1996), citing *United States v Sokolow*, 490 US 1; 109 S Ct 1581; 104 L Ed 2d 1 (1989). As previously stated, officers seized defendant's cell phone and searched it after Probation Officer Miller saw a photograph of a young woman's exposed breasts on defendant's Facebook page and screenshots of messages between defendant and KR discussing sexually transmitted diseases. Upon discovering that KR was only 14 or 15 years old at the time, Probation Officer Miller believed that defendant was violating his probation by possessing CSAM. The combination of the nude photograph of an apparently underage girl, and defendant's text messages with KR, who Probation Officer Miller knew to be under age, created a reasonable suspicion that defendant possessed CSAM or was engaging in sexual activity with an individual under the age of 16. Accordingly, the intrusion on defendant's significantly diminished privacy interests was reasonable. See *Knights*, 534 US at 121.

We hold, because defendant consented to the search condition in his probation order, the search condition was unambiguous, and reasonable suspicion supported the warrantless search of his phone, the trial court did not err by admitting evidence obtained from the cell phone.

---

[7] When making the argument that a cell phone is not a computer, defendant relied on the definition of a computer within Title 18 of the United States Criminal code, 18 USC 1030(e)(1). However, a smart phone also falls within the definition of a computer within that statute.

Defendant argues that the trial court erred by admitting inculpatory statements he made in a custodial interrogation because he was not competent to waive his *Miranda*[8] rights at the time of his interview. Because the trial court's determination that defendant was competent to waive his *Miranda* rights was not clearly erroneous, we disagree.

We review a trial court's determination whether a waiver was made knowingly, intelligently, and voluntarily de novo. *People v Gipson*, 287 Mich App 261, 264; 787 NW2d 126 (2010). However, "this Court does not disturb a trial court's factual findings regarding knowing and intelligent waiver of *Miranda* rights, unless that ruling is clearly erroneous. Credibility is crucial in determining a defendant's level of comprehension, and the trial judge is in the best position to make this assessment." *People v Daoud*, 462 Mich 621, 629; 614 NW2d 152 (2000) (quotation marks and citation omitted).

Both the United States and Michigan Constitutions guarantee the right against self-incrimination. US Const, Am V; Const 1963, art 1, § 17. "To protect this right, police officers generally must precede custodial interrogation with an adequate *Miranda* warning." *People v Lafey*, ___ Mich App ___, ___; ___NW3d ___ (2024) (Docket No. 361936); slip op at 9 (quotation marks and citation omitted). "Statements of an accused made during custodial interrogation are inadmissible unless the accused voluntarily, knowingly, and intelligently waived his or her Fifth Amendment rights." *People v Henry (After Remand)*, 305 Mich App 127, 144; 854 NW2d 114 (2014) (quotation marks and citation omitted).

The inquiry whether a waiver was voluntary and whether the waiver was knowingly and intelligently made are separate prongs in the two-part test for a valid waiver of *Miranda* rights. *People v Howard*, 226 Mich App 528, 538; 575 NW2d 16 (1997). Both inquiries require examination of the totality of the circumstances surrounding the interrogation. *People v Cheatham*, 453 Mich 1, 27; 551 NW2d 355 (1996). "[W]hether a waiver of Miranda rights is voluntary depends on the absence of police coercion." *Daoud*, 462 Mich at 635. "In contrast to the voluntary prong, determining whether a suspect's waiver was knowing and intelligent requires an inquiry into the suspect's level of understanding, irrespective of police behavior." *Id*. at 636. On appeal, defendant does not assert that his statements to police were involuntary or that the police officers coerced him to provide a statement or speak to them. Accordingly, our focus is on the "knowing and intelligent" prong.

As explained by our Supreme Court, to knowingly and understandingly waive *Miranda* rights, "a suspect need not understand the ramifications and consequences of choosing to waive or exercise the rights that the police have properly explained to him." *Cheatham*, 453 Mich at 28. Instead, the inquiry is "whether his decision was made with the full understanding that he need say nothing at all and that he might then consult with a lawyer if he so desired." *Id*. at 29 (quotation marks and citation omitted). "To establish a valid waiver, the state must present evidence sufficient to demonstrate that the accused understood that he did not have to speak, that he had the right to the presence of counsel, and that the state could use what he said in a later trial against

---

[8] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

him." *Id*. Moreover, "[w]aiver and defendant's competence to waive rights are legal, not psychological, concepts, and the judge, not an expert witness, is the ultimate decision maker on these issues." *Id*. at 34 (quotation marks and citation omitted; alteration in original).

In this case, Michigan State Trooper Kenneth Weismiller, Michigan State Police Officer Sarah Miles, and Probation Officer Miller went to defendant's residence at his grandmother's house to interview him. The officers arrived in a mix of plain clothes and uniforms. Defendant answered the door, was patted down, and walked out to an unmarked patrol vehicle. Defendant sat in the front passenger seat and was able to open and close the passenger door. Before conducting the interview, Trooper Weismiller explained that defendant did not need to talk to him and read defendant his *Miranda* rights. Defendant acknowledged that he understood his rights but stated that he was willing to speak with Trooper Weismiller. Defendant made several inculpatory statements during the interview that were later admitted at trial.

The trial court held a *Walker* hearing to determine if defendant's statements from the December 2020 police interview should be suppressed. Licensed psychologist, Dr. Aaron Ceresnie testified regarding his evaluation of defendant's mental competency to waive his *Miranda* rights. To prepare his competency report, Dr. Ceresnie interviewed defendant and had defendant relay his account of his waiver. Dr. Ceresnie also reviewed an audio recording of defendant's police interview, defendant's records from Jackson County Jail and Community Mental Health, and the police report from the date of the interview. Dr. Ceresnie concluded that defendant was competent to waive his *Miranda* rights at the legally relevant time. Dr. Ceresnie's testimony at the *Walker* hearing aligned with his report:

> Essentially because [defendant] was not coerced in my opinion and he was not intoxicated so he was able to provide a statement of his own free will. There was no information I received in terms of my reviewing his interview or the statements that he told me that he was unable to understand what was going on. He spoke I believe for about a half an hour after waiving his rights to the officer in which he provided a coherent detailed statement. And based on that there was no evidence I had that he was not founded in reality as far as understanding the accusations against him at the time or of, you know, understanding that he had the ability to speak with a lawyer and not answer questions if he wished.

In addition to Dr. Ceresnie's testimony, Trooper Weismiller and Probation Officer Miller testified regarding the circumstances of defendant's waiver of his *Miranda* rights during the December 2020 police interview.

The trial court held that defendant was competent to waive his *Miranda* rights and admitted defendant's inculpatory statements from the police interview into evidence. In support of its holding, the trial court credited Dr. Ceresnie's testimony and noted that the trial court's own review of audio recording of defendant's waiver showed that defendant did not sound sluggish or impaired during the interview.

On appeal, rather than addressing the trial court's holding on the matter, defendant argues that Dr. Ceresnie did not consider all the circumstances during the relevant period before opining that defendant was competent to waive his *Miranda* rights. In support of this argument, defendant

argues that he exhibited paranoia at the time of the police interview and was off of his medication. He points to portions of Dr. Ceresnie's competency report, such as an excerpt which states that on December 21, 2020, four days after the police interview, defendant told his caseworker that "people were wearing his clothing walking around the shelter and he knew people were watching him." Defendant also relies on an excerpt from the report that explains that defendant told Dr. Ceresnie he was "shaken up" and felt pressured when he waived his *Miranda* rights.

We first note that defendant's competence to provide a knowing and intelligent waiver is a legal, rather than psychological, concept. *Id*. The trial court, and not an expert witness, is the ultimate decision maker whether a defendant is competent to waive rights. Moreover, it was within the trial court's discretion to determine whether a witness's testimony was credible. See *Daoud*, 462 Mich at 629. Accordingly, our focus is not whether Dr. Ceresnie failed to consider all of the relevant evidence, but whether the trial court committed clear error when determining that defendant was competent to waive his *Miranda* rights on the basis of all of the evidence presented during the *Walker* hearing.

A defendant's mental illness alone does not invalidate a waiver. See *id*. at 643-644. Although record evidence supports that defendant had a serious history of bipolar I disorder, psychiatric hospitalizations, and court-ordered medications, the evidence surrounding defendant's interview does not indicate that defendant was actively experiencing psychosis during the police interview. Dr. Ceresnie was aware of defendant's mental health history, including the fact that he made statements suggesting paranoia several days after the police interview, when he evaluated defendant. Dr. Ceresnie reviewed the audio recording of the interview, heard defendant describe in his own words an account of the waiver, defendant's records from Jackson County Jail and Community Mental Health, and the police report from the date of the interview. After review of this information, Dr. Ceresnie concluded that defendant understood that he had the right not to speak, that he had the right to the presence of counsel, and that any statements he made could be used against him at trial at the time of the waiver. The trial court had access to Dr. Ceresnie's report and was in the best position to judge Dr. Ceresnie's credibility, see *id*. at 629.

Moreover, the trial court did not only rely on Dr. Ceresnie's expert opinion. The trial court and this Court reviewed the audio recording of defendant's *Miranda* waiver and interview with police officers. Although defendant told Dr. Ceresnie that he felt "shaken up" or "startled" by the officer's arrival at his home, defendant did not display disorganized or paranoid behavior during his interview. Instead, the audio recording demonstrates that defendant calmly acknowledged that he understood his rights before stating that he was willing to speak with Trooper Weismiller. He spoke in a clear tone throughout the interview and was able to maintain the conversation, which supports that defendant was alert and aware of his situation during the interview.

Accordingly, there is no basis to disturb the trial court's determination that defendant exhibited the basic understanding of his *Miranda* rights necessary for his waiver to be considered knowing and intelligent. See *id*. The trial court did not clearly err in finding defendant competent to waive his *Miranda* rights. Therefore, the trial court did not err in denying defendant's motion to suppress statements given to police officers.

# VI. CONSECUTIVE SENTENCES

Finally, defendant argues that the trial court abused its discretion by imposing consecutive sentences without providing adequate justifications for doing so. We agree and remand for articulation of the trial court's rationale for imposing each consecutive sentence.

"[W]hen a statute grants a trial court discretion to impose a consecutive sentence, the trial court's decision to do so is reviewed for an abuse of discretion, i.e., whether the trial court's decision was outside the range of reasonable and principled outcomes." *People v Norfleet*, 317 Mich App 649, 654; 897 NW2d 195 (2016).

"In Michigan, concurrent sentencing is the norm, and a consecutive sentence may be imposed only if specifically authorized by statute." *People v Ryan*, 295 Mich App 388, 401; 819 NW2d 55 (2012) (quotation marks and citation omitted). When consecutive sentencing is authorized, but not mandated, the trial court must articulate its rationale for its decision to impose each consecutive sentence; the rationale must be sufficiently particularized to permit appellate review. See *Norfleet*, 317 Mich App at 664-665. "The decision regarding each consecutive sentence is its own discretionary act and must be separately justified on the record." *Id.* at 665. The requirement to justify each consecutive sentence "help[s] ensure that the 'strong medicine' of consecutive sentences is reserved for those situations in which so drastic a deviation from the norm is justified." *Id.* Remand is necessary when the trial court fails to fully articulate its rationale for imposing consecutive sentences. See *id.* at 666.

Defendant was convicted of CSC-I under MCL 750.520b. MCL 750.520b(3) authorizes the imposition of consecutive sentences "for any other criminal offense arising from the same transaction." Pursuant to this statutory authority, the trial court determined that defendant would serve his sentences for CSC-I, aggravated child sexually abusive activity, and using a computer to commit a crime consecutively. At sentencing, the trial court read a portion of defendant's presentence investigation report, which stated as follows:

> It is respectfully recommended that the defendant be sentenced to a term of incarceration at the higher end of his legislative sentencing guidelines as his previous attempt at community supervision, lack of ability or willingness to comply with much of anything, continued criminal behavior involving concerns of public safety, including law enforcement and young females, and overall lack of insight or acceptance of wrong-doing all provide a strong basis for a higher term of incarceration.

> The defendant clearly does not follow the recommendations of qualified treatment providers when given the opportunity to do so and has prove [sic], has proven this since his conviction on November 9, 2022.

The trial court also considered the fact that defendant was 21 years old and KR was 13 years old when they started having a sexual relationship, including creating pornographic videos and pictures. Specifically, when the trial court determined that Counts 1, 2, and 4 would be served consecutively, it considered the fact that defendant was "on probation to the court at that time— and . . . the fact that [defendant] actually took this young girl and essentially held her against her

will and raped her over repeated days . . . ." Trial courts "retain discretion to consider uncharged conduct at sentencing." *People v Beesley*, 337 Mich App 50, 62; 972 NW2d 294 (2021).

The trial court properly considered an array of information when sentencing defendant that may support the imposition of a consecutive sentence. However, the trial court only spoke in general terms and did not separately address each consecutive sentence. As previously stated, each consecutive sentence represents a separate exercise of discretion. See *Norfleet*, 317 Mich App at 665. Therefore, the trial court did not give particularized reasons to impose each consecutive sentence under MCL 750.520b(3). Remand is necessary so that the trial court may fully articulate its rationale for each consecutive sentence imposed.

Affirmed, but remanded for the trial court to articulate its rationale for imposing each consecutive sentence or to resentence defendant. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Kirsten Frank Kelly
/s/ James Robert Redford